## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| Alexander Moore and Nina Moore, | |
| Plaintiffs, | Civil Action No: 1:23-cv-01890 |
| v. | |
| TransUnion LLC, Experian Information Solutions, Inc., Equifax Information Services LLC, Midland Mortgage Corporation, Capital One, National Association d/b/a Capital One Auto Finance, and Credit Acceptance Corporation, | **COMPLAINT** |
| Defendants. | **DEMAND FOR JURY TRIAL** |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### INTRODUCTION

1.      The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2.      Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3.      Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4.      The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer

reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5.    The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6.    The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harm that otherwise flows from inaccurate reporting.

7.    Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8.    Alexander Moore and Nina Moore ("Plaintiffs"), by Plaintiffs' attorneys, brings this action to challenge the actions of Defendants TransUnion LLC ("TU"), Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), Midland Mortgage Corporation ("Midland"), Capital One, National Association d/b/a Capital One Auto Finance ("Cap One"), and Credit Acceptance Corporation ("CAC") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information and Defendants' failure to maintain maximum possible accuracy as to Plaintiffs' credit reports.

9.    While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10.    Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11.    Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12.   Through this Complaint, Plaintiffs do not allege that any state court judgment was entered against anyone in error, and Plaintiffs do not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

13.   Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681 *et seq*.

14.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

15.   Plaintiffs reside in this District.

## PARTIES

16.   Plaintiffs are each an adult individual and are each a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

17.   Defendant TU is a business entity doing business in the Southern District of Indiana.

18.   Defendant TU's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

19.   Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

20.   Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21.   Defendant Experian is a business entity doing business in the Southern District of Indiana.

22.   Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

23.   Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

24.   Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25.   Defendant Equifax is a business entity doing business in the Southern District of Indiana.

26.   Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

27.   Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

28.   Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

29.   Defendant Midland is a business entity doing business in the Southern District of Indiana.

30.   Defendant Midland's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

31.   Defendant Midland is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

32.   Defendant Cap One is a business entity doing business in the Southern District of Indiana.

33.   Defendant Cap One's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

34.     Defendant Cap One is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

35.     Defendant CAC is a business entity doing business in the Southern District of Indiana.

36.     Defendant CAC's registered agent address is Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

37.     Defendant CAC is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

38.     Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

39.     Plaintiffs are informed and believe and thereon allege that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

40.     Plaintiffs are informed and believe and, on that basis, allege that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiffs for the relief prayed for herein.

**FACTUAL ALLEGATIONS**

41.     Plaintiffs purchased a home that was financed by a mortgage on or about September 1, 2004 (the "Mortgage").

42.     The Mortgage was serviced by Midland (the "Midland Loan").

43.     Plaintiffs purchased an automobile that was financed by a loan on or about July 7, 2020 (the "Cap One Loan").

44.     Plaintiffs purchased an automobile that was financed by a loan on or about August 5, 2020 (the "CAC Loan").

45.     On or about November 3, 2020, Plaintiffs filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiffs' case was assigned Case Number 20-06120-JMC-13 (the "Bankruptcy").

46.     On or about November 17, 2021, Plaintiffs' Chapter 13 plan was confirmed.

47.     The servicer of the Midland Loan, Midland, was listed in the Chapter 13 Plan as a creditor receiving payments through the Trustee conduit.

48.     The holder of the Cap One Loan, Cap One, was listed in the Chapter 13 Plan as a creditor receiving payments through the Trustee conduit.

49.     The holder of the CAC Loan, CAC, was listed in the Chapter 13 Plan as a creditor receiving payments through the Trustee conduit.

50.     The confirmed Chapter 13 Plan provided a nonstandard provision that stated:

> For all creditors receiving payments through the Trustee conduit, the following plan provision shall apply: This Chapter 13 Plan along with the Confirmation Order is a modification of the original contracted payment terms with the Debtor(s) as set forth herein and allowed under bankruptcy law. The payment due days, application of payments, assessment of late fees and attorney fees, and balances owed are hereby controlled by the terms described in this Chapter 13 Plan. See (*In re Diana Lynn Harvey*, 213 F.3d 318 7th Cir. 2000). This modified contract, created by the confirmed Chapter 13 Plan and Confirmation Order, shall only be subject to modification of the Chapter 13 Plan under 11 U.S.C. § 1329. This section is not applicable to direct pay secured creditors not paid through the Trustee conduit.

51.    The nonstandard provision in the confirmed Chapter 13 Plan creates an obligation for creditors who choose to credit report to do so in conformity with the modified contract created by the Chapter 13 Plan.

52.    This means that creditors who credit report must report the balance of the account within the Bankruptcy, along with the recent payment, payments made, and the current status of those payments.

53.    Despite the Chapter 13 Plan, the Midland Loan, Cap One Loan, and CAC Loan were reported without a balance or payment information on Plaintiffs' TU, Equifax, and Experian credit reports.

54.    Plaintiffs' creditors and potential creditors have accessed Plaintiffs' credit reports while the misreporting described herein was on Plaintiffs' credit reports and were misinformed by Defendants about Plaintiffs' credit worthiness.

### *TU and Midland's Inaccurate Reporting of the Midland Loan*

55.    Upon information and belief, on or before September 1, 2022, TU was publishing information about Plaintiffs' Midland Loan on each of Plaintiffs' TU consumer reports (the "TU Reports").

56.    On the TU Reports, TU and Midland were reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Midland Loan.

57.    The Midland Loan was reported on the TU Reports with no balance, no amount paid, no payment history, and remarks stating "Chapter 13 Bankruptcy".

58.    This was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiffs pay upon.

59.     It is inaccurate, incomplete, and/or materially misleading for TU and Midland to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

60.     By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Midland Loan, TU and Midland were incorrectly making it appear as if the Midland Loan was closed and negative.

61.     It is inaccurate, incomplete, and/or materially misleading for TU and Midland to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

62.     However, TU and Midland either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Midland Loan as discussed herein.

### TU and Cap One's Inaccurate Reporting of the Cap One Loan

63.     Upon information and belief, on the TU Report, TU and Cap One were also reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Cap One Loan on Alexander Moore's TU Report.

64.     The Cap One Loan was reported on Alexander Moore's TU Report with no balance, no amount paid, no payment history, and remarks stating "Chapter 13 Bankruptcy".

65.     This was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiffs pay upon.

66.     It is inaccurate, incomplete, and/or materially misleading for TU and Cap One to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

8

67.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Cap One Loan, TU and Cap One were incorrectly making it appear as if the Cap One Loan was closed and negative.

68.    It is inaccurate, incomplete, and/or materially misleading for TU and Cap One to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

69.    However, TU and Cap One either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Cap One Loan as discussed herein.

### TU and CAC's Inaccurate Reporting of the CAC Loan

70.    Upon information and belief, on the TU Report, TU and CAC were also reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the CAC Loan on Alexander Moore's TU Report.

71.    The CAC Loan was reported on Alexander Moore's TU Report with no balance, no amount paid, no payment history, and remarks stating, "Chapter 13 Bankruptcy".

72.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the CAC Loan, TU and CAC were incorrectly making it appear as if the CAC Loan was closed and negative.

73.    It is inaccurate, incomplete, and/or materially misleading for TU and CAC to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

74.    It is inaccurate, incomplete, and/or materially misleading for TU and CAC to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

75.    However, TU and CAC either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the CAC Loan as discussed herein.

***Experian and Midland's Inaccurate Reporting of the Midland Loan***

76.    Upon information and belief, on or before September 1, 2022, Experian was publishing information about Plaintiffs' Midland Loan on each of Plaintiffs' Experian consumer reports (the "Experian Reports").

77.    On the Experian Reports, Experian and Midland were reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Midland Loan.

78.    The Midland Loan was reported on the Experian Reports with no balance, no amount paid, no payment history, and remarks stating, "Debt included in or discharged through Bankruptcy Chapter 13".

79.    This was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiffs pay upon.

80.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Midland Loan, Experian and Midland were incorrectly making it appear as if the Midland Loan was closed and negative.

81.    It is inaccurate, incomplete, and/or materially misleading for Experian and Midland to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

82.    It is inaccurate, incomplete, and/or materially misleading for Experian and Midland to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

83.    However, Experian and Midland either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Cap One Loan as discussed herein.

***Experian and Cap One's Inaccurate Reporting of the Cap One Loan***

84.    Upon information and belief, on Alexander Moore's Experian Report, Experian and Cap One were also reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Cap One Loan.

85.    The Cap One Loan was reported on Alexander Moore's Experian Report with no balance, no amount paid, no payment history, and remarks stating, "Debt included in or discharged through Bankruptcy Chapter 13".

86.    This was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiffs pay upon.

87.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Cap One Loan, Experian and Cap One were incorrectly making it appear as if the Cap One Loan was closed and negative.

88.    It is inaccurate, incomplete, and/or materially misleading for Experian and Cap One to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

89.    It is inaccurate, incomplete, and/or materially misleading for Experian and Cap One to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

90.  However, Experian and Cap One either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Cap One Loan as discussed herein.

### *Experian and CAC's Inaccurate Reporting of the CAC Loan*

91.  Upon information and belief, on Alexander Moore's Experian Report, Experian and CAC were also reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the CAC Loan.

92.  The CAC Loan was reported on Alexander Moore's Experian Report with no balance, no amount paid, no payment history, and remarks stating, "Debt included in or discharged through Bankruptcy Chapter 13".

93.  This was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiffs pay upon.

94.  By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the CAC Loan, Experian and CAC were incorrectly making it appear as if the CAC Loan was closed and negative.

95.  It is inaccurate, incomplete, and/or materially misleading for Experian and CAC to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

96.  It is inaccurate, incomplete, and/or materially misleading for Experian and CAC to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

97.  However, Experian and CAC either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the CAC Loan as discussed herein.

*Equifax and Midland's Inaccurate Reporting of the Midland Loan*

98.    Upon information and belief, on or before September 1, 2022, Equifax was publishing information about Plaintiffs' Midland Loan on each of Plaintiffs' Equifax consumer reports (the "Equifax Reports").

99.    The Midland Loan was reported on the Equifax Reports with no balance, no amount paid, no payment history, and bankruptcy remarks.

100.    This was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiffs pay upon.

101.    It is inaccurate, incomplete, and/or materially misleading for Equifax and Midland to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

102.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Midland Loan, Equifax and Midland were incorrectly making it appear as if the Midland Loan was closed and negative.

103.    It is inaccurate, incomplete, and/or materially misleading for Equifax and Midland to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

104.    However, Equifax and Midland either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Midland Loan as discussed herein.

*Equifax and Cap One's Inaccurate Reporting of the Cap One Loan*

105.    Upon information and belief, on Alexander Moore's Equifax Report, Equifax and Cap One were also reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Cap One Loan.

106.    The Cap One Loan was reported on Alexander Moore's Equifax Report with no balance, no amount paid, no payment history, and bankruptcy remarks.

107.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Cap One Loan, Equifax and Cap One were incorrectly making it appear as if the Cap One Loan was closed and negative.

108.    This was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiffs pay upon.

109.    It is inaccurate, incomplete, and/or materially misleading for Equifax and Cap One to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

110.    It is inaccurate, incomplete, and/or materially misleading for Equifax and Cap One to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

111.    However, Equifax and Cap One either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the Cap One Loan as discussed herein.

### *Equifax and CAC's Inaccurate Reporting of the CAC Loan*

112.    Upon information and belief, on Alexander Moore's Equifax Report, Equifax and CAC were also reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the CAC Loan.

113.    The CAC Loan was reported on Alexander Moore's Equifax Report with no balance, no amount paid, no payment history, and bankruptcy remarks.

114.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the CAC Loan, Equifax and CAC were incorrectly making it appear as if the CAC Loan was closed and negative.

115.    This was inaccurate, incomplete, and/or materially misleading because the nonstandard provision in the confirmed Chapter 13 Plan provides that the Chapter 13 Plan creates a modified contract that Plaintiffs pay upon.

116.    It is inaccurate, incomplete, and/or materially misleading for Equifax and CAC to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

117.    It is inaccurate, incomplete, and/or materially misleading for Equifax and CAC to report any derogatory collection information which was factually incorrect, incomplete, and/or materially misleading.

118.    However, Equifax and CAC either reported or caused to be reported inaccurate, incomplete, and/or materially misleading information on the CAC Loan as discussed herein.

### *Plaintiffs' Dispute to TU of the Midland Loan, Cap One Loan, and CAC Loan*

119.    On or after September 1, 2022, Plaintiffs disputed TU's reporting of the Midland Loan, Cap One Loan, and CAC Loan pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect and inaccurate credit information.

120.    Plaintiffs each sent a letter to TU requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Midland Loan, Cap One Loan, and CAC Loan (the "TU Disputes").

121.    Specifically, Plaintiffs explained in their letters that the Midland Loan, Cap One Loan, and CAC Loan were paid through the Chapter 13 trustee.

122.    Plaintiffs each requested that TU, Midland, Cap One, and CAC list Plaintiffs' current balance and the ongoing payments they were making on the respective accounts.

123.    Plaintiffs attached supporting documents to the TU Disputes, including Plaintiffs' Chapter 13 Plan and a copy of the confirmation order.

124.    Upon information and belief, TU received the TU Disputes.

125.    Upon receipt of the TU Disputes, TU was required to conduct a reinvestigation into the Midland Loan, Cap One Loan, and CAC Loan on Plaintiffs' consumer report pursuant to 15 U.S.C. § 1681i.

126.    Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Midland, Cap One, and CAC of Plaintiffs' TU Disputes within five business days of receiving the disputes, to forward the supporting documents submitted with Plaintiffs' TU Disputes for Midland, Cap One, and CAC to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiffs' consumer file.

127.    Pursuant to 15 U.S.C. § 1681s-2(b), Midland had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

128.    Pursuant to 15 U.S.C. § 1681s-2(b), Cap One had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

129.   Pursuant to 15 U.S.C. § 1681s-2(b), CAC had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

130.   A reasonable investigation by TU and Midland would have indicated that they were reporting the Midland Loan inaccurately, incompletely, and/or in a materially misleading way.

131.   A reasonable investigation by TU and Cap One would have indicated that they were reporting the Cap One Loan inaccurately, incompletely, and/or in a materially misleading way.

132.   A reasonable investigation by TU and CAC would have indicated that they were reporting the CAC Loan inaccurately, incompletely, and/or in a materially misleading way.

133.   After receipt of the TU Disputes, TU and Midland continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Midland Loan on Plaintiffs' TU credit reports.

134.   After receipt of the TU Disputes, TU and Cap One continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Cap One Loan on Plaintiff Alexander Moore's TU credit report.

135.   After receipt of the TU Disputes, TU and CAC continued to report the inaccurate, incomplete, and/or materially misleading information regarding the CAC Loan on Plaintiff Alexander Moore's TU credit report.

### *Plaintiff Alexander Moore's Dispute to Experian of the Midland Loan, Cap One Loan, and CAC Loan*

136.   On or after September 1, 2022, Plaintiff Alexander Moore disputed Experian's reporting of the Midland Loan, Cap One Loan, and CAC Loan pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

137.    Plaintiff Alexander Moore sent a letter to Experian requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Midland Loan, Cap One Loan, and CAC Loan (the "Experian Dispute").

138.    Specifically, Plaintiff Alexander Moore explained that the Midland Loan, Cap One Loan, and CAC Loan were paid through the Chapter 13 trustee.

139.    Plaintiff Alexander Moore requested that Experian, Midland, Cap One, and CAC list Plaintiffs' current balance and the ongoing payments Plaintiffs were making on the respective accounts.

140.    Plaintiff Alexander Moore attached supporting documents to the Experian Dispute, including Plaintiffs' Chapter 13 Plan and a copy of the confirmation order.

141.    Upon information and belief, Experian received the Experian Dispute.

142.    Upon receipt of the Experian Dispute, Experian was required to conduct a reinvestigation into the Midland Loan, Cap One Loan, and CAC Loan on Plaintiff Alexander Moore's consumer report pursuant to 15 U.S.C. § 1681i.

143.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Midland, Cap One, and CAC of Plaintiff Alexander Moore's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff Alexander Moore's Experian Dispute for Midland, Cap One, and CAC to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiffs' consumer file.

144.    Pursuant to 15 U.S.C. § 1681s-2(b), Midland had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

145.    Pursuant to 15 U.S.C. § 1681s-2(b), Cap One had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

146.    Pursuant to 15 U.S.C. § 1681s-2(b), CAC had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

147.    A reasonable investigation by Experian and Midland would have indicated that they were reporting the Midland Loan inaccurately, incompletely, and/or in a materially misleading way.

148.    A reasonable investigation by Experian and Cap One would have indicated that they were reporting the Cap One Loan inaccurately, incompletely, and/or in a materially misleading way.

149.    A reasonable investigation by Experian and CAC would have indicated that they were reporting the CAC Loan inaccurately, incompletely, and/or in a materially misleading way.

150.    After receipt of the Experian Dispute, Experian and Midland continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Midland Loan on Plaintiff Alexander Moore's Experian credit report.

151.    After receipt of the Experian Dispute, Experian and Cap One continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Cap One Loan on Plaintiff Alexander Moore's Experian credit report.

152.    After receipt of the Experian Dispute, Experian and CAC continued to report the inaccurate, incomplete, and/or materially misleading information regarding the CAC Loan on Plaintiff Alexander Moore's Experian credit report.

### *Plaintiffs' Dispute to Equifax of the Midland Loan, Cap One Loan, and CAC Loan*

153.    On or after September 1, 2022, Plaintiffs disputed Equifax's reporting of the Midland Loan, Cap One Loan, and CAC Loan pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

154.    Plaintiffs each sent a letter to Equifax requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Midland Loan, Cap One Loan, and CAC Loan (the "Equifax Disputes").

155.    Specifically, Plaintiffs explained that the Midland Loan, Cap One Loan, and CAC Loan were paid through the Chapter 13 trustee.

156.    Plaintiffs requested that Equifax, Midland, Cap One, and CAC list Plaintiffs' current balance and the ongoing payments they were making on respective accounts.

157.    Plaintiffs attached supporting documents to the Equifax Disputes, including Plaintiffs' Chapter 13 Plan and a copy of the confirmation order.

158.    Upon information and belief, Equifax received the Equifax Disputes.

159.    Upon receipt of the Equifax Disputes, Equifax was required to conduct a reinvestigation into the Midland Loan, Cap One Loan, and CAC Loan on Plaintiffs' consumer reports pursuant to 15 U.S.C. § 1681i.

160.    Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Midland, Cap One, and CAC of Plaintiffs' Equifax Disputes within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiffs' Equifax Disputes for Midland, Cap One, and CAC to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiffs' consumer file.

161.    Pursuant to 15 U.S.C. § 1681s-2(b), Midland had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

162.    Pursuant to 15 U.S.C. § 1681s-2(b), Cap One had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

163.    Pursuant to 15 U.S.C. § 1681s-2(b), CAC had a duty to conduct an investigation with respect to the disputed information, and to modify or delete that information appropriately.

164.    A reasonable investigation by Equifax and Midland would have indicated that they were reporting the Midland Loan inaccurately, incompletely, and/or in a materially misleading way.

165.    A reasonable investigation by Equifax and Cap One would have indicated that they were reporting the Cap One Loan inaccurately, incompletely, and/or in a materially misleading way.

166.    A reasonable investigation by Equifax and CAC would have indicated that they were reporting the CAC Loan inaccurately, incompletely, and/or in a materially misleading way.

167.    After receipt of the Equifax Disputes, Equifax and Midland continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Midland Loan on Plaintiffs' Equifax credit reports.

168.    After receipt of the Equifax Dispute, Equifax and Cap One continued to report the inaccurate, incomplete, and/or materially misleading information regarding the Cap One Loan on Plaintiff Alexander Moore's Equifax credit report.

169.    After receipt of the Equifax Dispute, Equifax and CAC continued to report the inaccurate, incomplete, and/or materially misleading information regarding the CAC Loan on Plaintiff Alexander Moore's Equifax credit report.

### *TU, Cap One, and CAC's Continued Inaccurate Reporting after the TU Disputes*

170.    Following Defendants' respective investigations into the TU Dispute, TU issued investigation results to Alexander Moore dated October 18, 2022, and to Nina Moore dated October 18, 2022 (the "TU Investigation Results").

171.    In the TU Investigation Results, TU and Cap One continued to report the tradeline for the Cap One Loan on Alexander Moore's TU Investigation Results in an inaccurate, incomplete, and/or materially misleading way.

172.    TU and Cap One reported the Cap One Loan on Alexander Moore's TU Investigation Results with: no balance or monthly payment amount, no payment history, a status of "Account Included in Bankruptcy," and Comments including "Chapter 13 Bankruptcy".

173.    The Alexander Moore TU Investigation Results did not include a statement on the tradeline
for the Cap One Loan that the account was disputed by the consumer.

174.    TU and Cap One's reporting was inaccurate, incomplete, and/or materially misleading on
Alexander Moore's TU Investigation Results because the result of their reporting was to make
it appear as if the Cap One Loan was negative, with no balance owed or monthly payments
being made, and that Plaintiff Alexander Moore had not made any payments since Plaintiffs'
Bankruptcy was filed.

175.    TU and Cap One's continued inaccurate, incomplete, and/or materially misleading reporting
on Alexander Moore's TU Investigation Results and failures to investigate or correct the
inaccurately reported information on the Cap One Loan were problematic because the TU
Dispute included relevant supporting documents that TU and Cap One chose to ignore.

176.    Additionally, in Alexander Moore's TU Investigation Results, TU and CAC reported the
tradeline for the CAC Loan in an inaccurate, incomplete, and/or materially misleading way.

177.    TU and CAC reported the CAC Loan on Alexander Moore's TU Investigation Results with:
no balance or monthly payment amount, no payment history, a status of "Account Included in
Bankruptcy," and Comments including "Chapter 13 Bankruptcy".

178.    TU and CAC's reporting was inaccurate, incomplete and/or materially misleading on
Alexander Moore's TU Investigation Results because the result of their reporting was to make
it appear as if the CAC Loan was negative, with no balance owed or monthly payments being
made, and that Plaintiff Alexander Moore had not made any payments since the Bankruptcy
was filed.

179.    TU and CAC's continued inaccurate, incomplete, and/or materially misleading reporting on
Alexander Moore's TU Investigation Results, failures to investigate or correct the inaccurately

reported information on the CAC Loan were problematic because TU Disputes included relevant supporting documents that TU and CAC chose to ignore.

180. The Midland Loan did not appear on Plaintiffs' TU Investigation Results as they appear to have been deleted, and the Cap One Loan and CAC Loan did not appear on Plaintiff Nina Moore's TU Investigation Results.

181. On an Alexander Moore TU credit report dated October 2, 2023, the Cap One Loan and CAC Loan continued to report inaccurately, incompletely, and/or in a materially misleading way, without balance or payment information.

### Experian, Midland, Cap One, and CAC's Continued Inaccurate Reporting after the Experian Dispute

182. Following Defendants' investigations into Alexander Moore's Experian Dispute, Experian issued dispute results to Alexander Moore dated November 2, 2022 (the "Experian Dispute Results").

183. In the Experian Dispute Results, Experian and Midland reported the tradeline for the Midland Loan in an inaccurate, incomplete, and/or materially misleading way.

184. Experian and Midland reported the Midland Loan with: no balance or monthly payment amount, no payment history, a status of "Petition for Chapter 13 Bankruptcy".

185. Experian and Midland's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Midland Loan was negative, with no balance owed or monthly payments being made, and that Plaintiff Alexander Moore had not made any payments since Plaintiffs' Bankruptcy was filed.

186.   Experian and Midland's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the Midland Loan were problematic because the Experian Dispute included relevant supporting documents that Experian and Midland chose to ignore.

187.   Additionally, in the Experian Dispute Results, Experian and Cap One reported the tradeline for the Cap One Loan in an inaccurate, incomplete, and/or materially misleading way.

188.   Experian and Cap One reported the Cap One Loan with: no balance or monthly payment amount, no payment history, a status of "Petition for Chapter 13 Bankruptcy".

189.   Experian and Cap One's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Cap One Loan was negative, with no balance owed or monthly payment being made, and that Plaintiff Alexander Moore had not made any payments since Plaintiffs' Bankruptcy was filed.

190.   Experian and Cap One's continued inaccurate, incomplete, and/or materially misleading reporting and failures to investigate or correct the inaccurately reported information on the Cap One Loan were problematic because the Experian Dispute included relevant supporting documents that Experian and Cap One chose to ignore.

191.   Also in the Experian Dispute Results, Experian and CAC reported the tradeline for the CAC Loan in an inaccurate, incomplete, and/or materially misleading way.

192.   Experian and CAC reported the CAC Loan with: no balance or monthly payment amount, no payment history, a status of "Petition for Chapter 13 Bankruptcy/Never late."

193.    Experian and CAC's reporting was inaccurate, incomplete and/or materially misleading because the result of their reporting was to make it appear as if the CAC Loan was negative, with no balance owed or monthly payment being made, and that Plaintiff Alexander Moore had not made any payments since the Bankruptcy was filed.

194.    Experian and CAC's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the inaccurately reported information on the CAC Loan were problematic because Experian Dispute included relevant supporting documents that Experian and CAC chose to ignore.

195.    On an Experian credit report for Alexander Moore dated August 24, 2023, the Midland Loan, Cap One Loan, and CAC Loan continued to report inaccurately, incompletely, and/or in a materially misleading way, without proper balance or payment information.

### Equifax, Midland, Cap One, and CAC's Continued Inaccurate Reporting after the Equifax Dispute

196.    Following Defendants' investigations into the Equifax Disputes, Equifax issued dispute results dated October 5, 2022, to Alexander Moore and October 8, 2022, for Nina Moore (the "Equifax Dispute Results").

197.    In the Equifax Dispute Results, Equifax and Midland reported the tradeline for the Midland Loan in an inaccurate, incomplete, and/or materially misleading way.

198.    Equifax and Midland reported the Midland Loan on both Plaintiffs' Equifax Dispute Results with: no balance or monthly payment amount, no payment history, and additional information stating "Bankruptcy Chapter 13" and "Bankruptcy Petition".

199. Equifax and Midland's reporting was inaccurate, incomplete and/or materially misleading because the result of their reporting was to make it appear as if the Midland Loan was negative, with no balance owed or monthly payment being made, and that Plaintiffs had not made any payments since the Bankruptcy was filed.

200. Equifax and Midland's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the inaccurately reported information on the Midland Loan were problematic because Equifax Dispute included relevant supporting documents that Equifax and Midland chose to ignore.

201. Additionally in Alexander Moore's Equifax Dispute Results, Equifax and Cap One reported the tradeline for the Cap One Loan in an inaccurate, incomplete, and/or materially misleading way.

202. Equifax and Cap One reported the Cap One Loan on Alexander Moore's Equifax Dispute Results with: no balance or monthly payment amount, no payment history, and additional information stating "Bankruptcy Chapter 13" and "Bankruptcy Petition".

203. Equifax and Cap One's reporting on Alexander Moore's Equifax Dispute Results was inaccurate, incomplete and/or materially misleading because the result of their reporting was to make it appear as if the Cap One Loan was negative, with no balance owed or monthly payment being made, and that Plaintiffs had not made any payments since the Bankruptcy was filed.

204. Equifax and Cap One's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the inaccurately reported information on the Cap One Loan were problematic because Equifax Dispute included relevant supporting documents that Equifax and Cap One chose to ignore.

205.    Also in Alexander Moore's Equifax Dispute Results, Equifax and CAC reported the tradeline for the CAC Loan in an inaccurate, incomplete, and/or materially misleading way.

206.    Equifax and CAC reported the CAC Loan on Alexander Moore's Equifax Dispute Results with: no balance or monthly payment amount, no payment history, and additional information stating "Bankruptcy Chapter 13" and "Bankruptcy Petition".

207.    Equifax and CAC's reporting on Alexander Moore's Equifax Dispute Results was inaccurate, incomplete and/or materially misleading because the result of their reporting was to make it appear as if the CAC Loan was negative, with no balance owed or monthly payment being made, and that Plaintiffs had not made any payments since the Bankruptcy was filed.

208.    Equifax and CAC's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the inaccurately reported information on the CAC Loan were problematic because Equifax Dispute included relevant supporting documents that Equifax and CAC chose to ignore.

209.    On an Equifax credit report for Alexander Moore dated September 25, 2023, the Midland Loan, Cap One Loan, and CAC Loan continued to report inaccurately, incompletely, and/or in a materially misleading way, without balance or payment information.

210.    On Alexander Moore's September 25, 2023, Equifax credit report, the Midland Loan, Cap One Loan, and CAC Loan also each reported as closed.

211.    The Midland Loan was not closed, as Plaintiff Alexander Moore is continuing to make payments on a monthly basis on the Midland Loan.

212.    The Cap One Loan was not closed, as Plaintiff Alexander Moore is continuing to make payments on a monthly basis on the Cap One Loan.

213.   The CAC Loan was not closed, as Plaintiff Alexander Moore is continuing to make payments on a monthly basis on the CAC Loan.

214.   On an Equifax credit report for Nina Moore dated August 16, 2023, the Midland Loan continued to report inaccurately, incompletely, and/or in a materially misleading way, without balance or payment information.

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

215.   A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

      i.      credit or insurance to be used primarily for personal, family, or household purposes;

      ii.     employment purposes; or

     iii.     any other purpose authorized under section 1681b.

216.   As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

217.   A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

218.   The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

*Credit Scoring*

219.    The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

220.    Defendants' inaccurate and/or materially misleading reporting has caused Plaintiffs to suffer from reduced FICO credit scores.

221.    The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

222.    The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default.

    *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision_and_examination_manual-v2.pdf.

223.    FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

224.    A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

225.   Inaccurate, incomplete, and/or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

226.   Here, the inaccurate, incomplete, and/or materially misleading reporting of the Midland Loan, Cap One Loan, and CAC Loan adversely affects Plaintiffs' FICO scores as Plaintiffs' credit reports make it appear as though the accounts are negative, and Plaintiffs have not been paying on the subject loans at all.

227.   There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

228.   Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### Defendants' Violations of the FCRA and Plaintiffs' Damages

229.   It is inaccurate, incomplete, and/or materially misleading to report an account does not have a balance when it does in fact have a balance.

230.   It is inaccurate, incomplete, and/or materially misleading to report an account does not have a monthly payment made upon it when the consumer is in fact making payments on the account.

231.   It is inaccurate, incomplete, and/or materially misleading to suppress positive and accurate account balance and payment data.

232.    As evidenced by TU's failure to report accurate information on the Cap One Loan and CAC Loan on Plaintiff Alexander Moore's TU credit reports after notice of its failures to report balance and payment information, TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

233.    TU either ignored or failed to review all relevant information on the Cap One Loan and CAC Loan and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

234.    As evidenced by Experian's failure to report accurate information on the Midland Loan on Plaintiff Alexander Moore's Experian credit reports after notice of its failures to report balance and payment information, Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

235.    Experian either ignored or failed to review all relevant information on the Midland Loan and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

236.    As evidenced by Equifax's failure to report accurate information on the Midland Loan on Plaintiffs' Equifax credit reports and the Cap One Loan and CAC Loan on Plaintiff Alexander Moore's Equifax credit reports after notice of its failures to report balance and payment information, Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

237.   Equifax either ignored or failed to review all relevant information on the Cap One Loan and CAC Loan and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

238.   Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiffs sent Defendants written disputes identifying the inaccurate, incomplete, and/or materially misleading information related to the Midland Loan, Cap One Loan, and CAC Loan, Defendants, upon receipt of Plaintiffs' disputes, failed to conduct a reasonable investigation and/or reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

239.   Defendants failed to review all relevant information provided by Plaintiffs in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

240.   Due to Defendants' failure to reasonably investigate and/or reinvestigate, Defendants further failed to correct and update Plaintiffs' information as required by 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b), thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

241.   By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i and/or 15 U.S.C. 1681s-2(b).

242.   Defendants Midland, Experian, and Equifax's respective inaccurate, incomplete, and/or materially misleading reporting on tradeline for the Midland Loan—in light of their knowledge of the positive data they could report on the Midland Loan—was willful. Plaintiffs are, accordingly, eligible for statutory damages for those violations.

243.    Defendants Cap One, CAC, TU, Experian, and Equifax's respective inaccurate, incomplete, and/or materially misleading reporting on tradelines for the Cap One Loan and CAC Loan on Plaintiff Alexander Moore's credit reports—in light of their knowledge of the positive data they could report on the Cap One Loan and CAC Loan—was willful.  Plaintiff Alexander Moore is, accordingly, eligible for statutory damages for those violations.

244.    Moreover, and in the alternative, the active suppression of positive account data that only serves to harm Plaintiffs is a further indication that TU, Experian, and Equifax acted willfully.

245.    Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

246.    Based upon Defendants' respective knowledge of the Midland Loan, Cap One Loan, and CAC Loan and the respective data they possessed on the Midland Loan, Cap One Loan, and CAC Loan, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

247.    Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiffs to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiffs' creditworthiness, damage to Plaintiffs' credit reputation, humiliation, frustration, and emotional distress.

248.    Plaintiffs entered bankruptcy to clean up and improve Plaintiffs' credit, lay the groundwork for future credit, and to pay and resolve debts.

249.    Plaintiffs work hard to pay their debts yet feel like they are not getting the benefits of the positive reporting they should on the Midland Loan, Cap One Loan, and CAC Loan.

250. Upon information and belief, Plaintiffs' Experian, Equifax, and Trans Union credit reports were published to third parties while the inaccurate, incomplete, and/or materially misleading information on the Midland Loan, Cap One Loan, and CAC Loan was reporting.

251. Instead of those third parties seeing the Midland Loan, Cap One Loan, and CAC Loan as positive accounts that Plaintiffs were paying on every month, they instead appeared as negative accounts without any payment data.

252. This inaccurate, incomplete, and/or materially misleading information was published to those third parties.

253. Defendants thus caused a defamation-type harm upon Plaintiffs.

254. Plaintiffs made a commitment to pay their debts as agreed in bankruptcy in the hope of obtaining a fresh start and better credit but now they feel stuck and worry the inaccurate information concerning the Midland Loan, Cap One Loan, and CAC Loan will prevent that from occurring.

255. While the inaccurate, incomplete, and/or materially misleading information concerning the Midland Loan, Cap One Loan, and CAC Loan appeared on Plaintiff Alexander Moore's credit reports, Plaintiff Alexander Moore was denied credit to obtain financing from Vivint for an upgrade to Plaintiffs' home security system.

256. While the inaccurate, incomplete, and/or materially misleading information concerning the Midland Loan appeared on Plaintiff Nina Moore's credit reports, upon information and belief, Plaintiff Nina Moore was offered credit to obtain financing from Vivint for an upgrade to Plaintiffs' home security system, but at terms less favorable than Plaintiff Nina Moore would have otherwise been offered due to how the Midland Loan were reporting on her credit reports.

257.    In early 2023, Plaintiffs obtained approval from their bankruptcy trustee to obtain credit to upgrade the older model vehicles they own, but the car dealership's lenders denied them credit and Plaintiffs believe the inaccurate, incomplete, and/or materially misleading reporting on the Midland Loan, Cap One Loan, and CAC Loan was a cause for the denial.

258.    While the inaccurate, incomplete, and/or materially misleading information concerning the Midland Loan, Cap One Loan, and CAC Loan appeared on Plaintiffs' credit reports, Plaintiffs were denied credit to obtain financing for jewelry purchases from Kay Jewelers and Reis-Nichols Jewelers.

259.    Defendants' inaccurate, incomplete, and/or materially misleading reporting on the Midland Loan, Cap One Loan, and CAC Loan after Plaintiffs clearly requested a correction has caused anxiety, stress and fear, which has resulted in an aggravation of anxiety and insomnia for Alexander Moore and has left Nina Moore feeling helpless and unable to help her husband by fixing the situation.

260.    Defendants' inaccurate, incomplete, and/or materially misleading reporting on the Midland Loan, Cap One Loan, and CAC Loan after Plaintiffs clearly requested a correction has caused Plaintiffs fear resulting from worry that Plaintiffs will not be able to obtain credit to handle future financial emergencies that their family might encounter.

261.    Plaintiffs have incurred pecuniary expenses as a result of their efforts to correct Defendants' inaccurate reporting on the Midland Loan, Cap One Loan, and CAC Loan.

262.    Plaintiffs have suffered ongoing irritation, frustration, and humiliation knowing that their current and potential lenders have viewed Plaintiffs' credit reports that fail to reflect their past and ongoing payments on the Midland Loan, Cap One Loan, and CAC Loan.

263.  Upon information and belief, Plaintiffs' credit scores have been negatively impacted by Defendants' inaccurate, incomplete, and/or materially misleading reportings.

264.  The adverse effect on Plaintiffs' credit scores places Plaintiffs at the material risk of being denied credit or receiving less favorable credit terms than Plaintiffs otherwise would.

265.  Creating the false impression that the Midland Loan, Cap One Loan, and/or CAC Loan were negative instead of positive creates a material risk that Plaintiffs would be denied credit, receive less favorable credit treatment than Plaintiffs otherwise would, or receive other unfavorable treatment than Plaintiffs otherwise would, from any viewer of Plaintiffs' credit reports that is engaged in judgment-based lending.

## FIRST CAUSE OF ACTION
### FCRA - 15 U.S.C. § 1681 *et seq.*

266.  Plaintiffs repeat, re-allege, and incorporate by reference all above paragraphs.

267.  The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to TU, Experian, and Equifax.

268.  Defendants TU, Experian, and Equifax's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

269.  Defendant Midland, Cap One, and CAC's acts and omissions were in violation of 15 U.S.C. § 1681s-2(b).

270.  The above-described violations by Defendants were willful, allowing Plaintiffs to recover under 15 U.S.C. § 1681n.

271.  As a result of each and every willful violation of the FCRA, Plaintiffs are each entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C.

§ 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

272.   In the alternative, Defendants were negligent in their actions, which entitled Plaintiffs to recover under 15 U.S.C. § 1681o.

273.   As a result of each and every negligent violation of the FCRA, Plaintiffs are each entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

## REQUEST FOR A JURY TRIAL

274.   Plaintiffs are entitled to, and demand, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully requests the Court grant Plaintiffs the following relief against Defendants:

1.   A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2.   Plaintiffs' actual damages from each Defendant;

3.   Statutory damages of not less than $100.00 and not more than $1,000.00 to each Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;

4.   Punitive damages from each Defendant to each Plaintiff, pursuant to 15 U.S.C. §1681n(a)(2);

5.   An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6.   Any other relief the Court may deem just and proper.

Dated: <u>October 23, 2023</u>                    Respectfully Submitted,


                                                 By: */s/ Richard J. Shea*
                                                     Richard J. Shea, Esq., # 21396-53
                                                     Sawin & Shea, LLC.
                                                     6100 N. Keystone Avenue, Suite 620
                                                     Indianapolis, IN 46220
                                                     Telephone: (317) 255-2600
                                                     Facsimile: (317) 255-2905
                                                     E-mail: rshea@sawinlaw.com
                                                     *Attorneys for Plaintiffs*